UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GARLAND ATWOOD II, AKA DAVID SMITH OR DAVID SMITH-GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER PAULA BURKE,<br><br>Defendant. | Case No.: 17cv1315-MMA (BLM)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECUSAL;**<br><br>[Doc. No. 28]<br><br>**AND GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 21] |

Plaintiff David Garland Atwood II, AKA David Smith ("Plaintiff"), proceeding *pro se* and *in forma pauperis* ("IFP"), is currently incarcerated at United States Penitentiary Tucson.¹ Plaintiff filed a First Amended Complaint against Defendant Officer Paula Burke ("Defendant"), an employee of the U.S. Probation Office in San Diego, California, pursuant to *Bivens v. Six Unknown Named Fed. Narcotics Agents*, 403 U.S. 388 (1971). *See* Doc. No. 18 (hereinafter "FAC").² Plaintiff alleges Defendant was

---

¹ At the time Plaintiff commenced this action, Plaintiff was a federal prisoner on supervised release.

² All citations to specific pages refer to the pagination assigned by the CM/ECF system.

deliberately indifferent to his medical needs in violation of his Eighth Amendment rights. FAC ¶¶ 85-86.[3]

On December 19, 2018, Defendant filed a motion to dismiss Plaintiff's FAC for failure to state a claim upon which relief can be granted. *See* Doc. No. 21. Plaintiff filed an opposition, as well as a supplemental opposition, to which Defendant replied. *See* Doc. Nos. 27, 37, 38.

Plaintiff also filed various motions for relief, including a Motion for Recusal, Motion for Summary Judgment, and Motion for Court Order to Allow Access to Legal Materials.[4] *See* Doc. Nos. 28, 32, 33. Defendant filed oppositions to the respective motions. *See* Doc. Nos. 41, 39, 40. To date, Plaintiff has not filed reply briefs in support of his motions.

The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. Nos. 42, 43. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Recusal and **GRANTS** Defendant's Motion to Dismiss.

## BACKGROUND

Plaintiff has been "diagnosed with idiopathic, Stage Three, Bi-lateral, Avascular Necrosis (AVN)" in both of his hips. FAC ¶ 3. In March 2017, Plaintiff met with an orthopedic surgeon at the University of Mississippi Medical Center, who opined that due to "the progression of the disease in the left hip, the only treatment option [is] a total hip

---

[3] Plaintiff also claims Defendant retaliated against him in violation of his First Amendment rights. *See* FAC ¶¶ 88-89. In opposition to Defendant's motion to dismiss, however, Plaintiff "concedes that his First Amendment retaliation claim is foreclosed by *Ziglar v. Abbasi* and does not contest the Court dismissing this claim[]." Doc. No. 27 at 17. As such, the Court **DISMISSES** Plaintiff's First Amendment *Bivens* claim.

[4] In his Motion for Court Order to Allow Access to Legal Materials, Plaintiff requests access to his medical records stored on CD-ROM and/or flash drives. *See* Doc. No. 33. Plaintiff claims that without access to his medical records, he "will be unable to appropriately respond to filings from the defendant and litigate this case." *Id.* at 3.

replacement." *Id.* ¶ 12. The doctor further opined that other options may be available "to save the structural integrity of the right hip." *Id.* ¶ 13.

Plaintiff was on federal supervised release at the time, and sought permission from his U.S. Probation Officer, Shameka Horton, to temporarily move to San Diego, California, to obtain medical treatment. *Id.* ¶ 40. Plaintiff claims that he could not afford treatment in Mississippi, but if he moved to San Diego, he "would have been able to enroll in the clinical trial wherein he could have obtained free treatment[.]" *Id.* ¶ 38. Officer Horton indicated "she would approve the transfer to San Diego if the U.S. Probation Officer in San Diego would agree to accept supervision." *Id.* ¶ 41. Defendant, an employee of the U.S. Probation Office in San Diego, eventually denied Plaintiff's request to move to San Diego. *See id.* ¶ 54. Plaintiff alleges that Defendant, in a letter to Congressman Scott Peters, indicated she denied Plaintiff's request because "a cursory Google search of [Plaintiff's] condition reveals numerous providers in Mississippi" and "given that there will be undetermined, and potentially significant expenses in relation to his treatment, it does not seem reasonable that the State of California should bear that burden." *Id.* ¶ 56.

Shortly after Defendant denied Plaintiff's request to move to San Diego, Plaintiff commenced the instant action against the United States of America and the U.S. Probation Office. *See* Doc. No. 1. Plaintiff alleges that after commencing the instant action, Defendant contacted Officer Horton in Mississippi and requested that Officer Horton and the Probation Office in Mississippi "proceed with filing the petition to revoke Atwood's supervised release so as to moot the requests to move to San Diego, moot the lawsuit and mandamus petition, and to moot the motion to transfer supervised release from Mississippi to San Diego." FAC ¶ 65. Plaintiff alleges Defendant told Officer Horton that "San Diego was tired of dealing with Atwood" and that "continuously filing lawsuits was not going to get Atwood anywhere in San Diego or Mississippi[.]" *Id.* ¶ 66. The district judge presiding over Plaintiff's case in Mississippi ultimately revoked his supervised release and sentenced him to prison with an "expected release date in 2022."

*Id.* ¶ 68.

Based on the foregoing, Plaintiff alleges that in denying his request to move to San Diego to obtain treatment and surgery for his AVN disease, "Officer Burke was deliberately indifferent to his medical needs," in violation of the Eighth Amendment. *Id.* ¶ 85. Plaintiff brings this claim against Defendant in her individual capacity pursuant to *Bivens*, and seeks compensatory, nominal, and punitive damages. *See id.* ¶¶ 2, 91-93.

## DISCUSSION

### I. Plaintiff's Motion for Recusal

As a preliminary matter, Plaintiff requests the Court "recuse itself and have the case reassigned to a judge outside the judicial Southern District of California" because Defendant is a probation officer, employed in this District. Doc. No. 28 at 1. Plaintiff contends that because Defendant "works closely on a daily basis with the judges of this district," the Court's impartiality "might reasonably be questioned[.]" *Id.* at 1-2. Defendant opposes Plaintiff's motion, indicating that a purely professional relationship does not suggest an appearance of impropriety. *See* Doc. No. 41 at 2.

Recusal of federal judges is governed by 28 U.S.C. §§ 144 and 455. Under Section 144, a party must show "personal bias or prejudice either against him or in favor of any adverse party[.]" 28 U.S.C. § 144. Under Section 455, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Under both statutes, the standard for recusal is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984). "The reasonable person is not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer." *U.S. v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (internal quotation marks and citation omitted). While it is "important that judges be and appear to be impartial," it is "also important . . . that judges not recuse themselves unless required to do so, or it would be too easy for those who seek judges favorable to their case to

disqualify those that they perceive to be unsympathetic merely by publicly questioning their impartiality." *Perry v. Schwarzenegger*, 630 F.3d 909, 916 (9th Cir. 2011).

Here, the Court finds that Plaintiff does not state an appropriate ground for recusal. The Undersigned has no familial, personal, or financial relationship to Defendant. Moreover, Plaintiff has not demonstrated that any act by the Undersigned evidences firmly rooted antagonism or bias. Rather, Plaintiff speculates that the professional relationship between probation officers and judges of the Southern District might give rise for a reasonable observer to question the impartiality of the judges. However, recusal is not warranted under §§ 144 or 455 based on speculation. *See Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993) (noting that the plaintiff's assertions "are nothing more than speculation."). Additionally, Plaintiff does not cite to, nor is the Court aware of, any authority holding that an individual's professional relationship with a judge suggests an appearance of impropriety. *Cf. United States v. Sundrud*, 397 F. Supp. 2d 1230, 1236 (C.D. Cal. 2005) (denying the plaintiff's motion to recuse all judges of the Central District of California and noting that a "casual relationship with a victim officer who provides court security does not require recusal."); *Pellegrini v. Merchant*, No. 16cv1292 LJO-BAM, 2017 WL 735740, at *3 (E.D. Cal. Feb. 24, 2017) (denying the plaintiff's motion for recusal and noting that the plaintiff "provides no authority holding that a purely professional association suggests an appearance of impropriety").

In sum, the Undersigned is unaware of any reason why he cannot continue to be impartial in exercising his duties relating to this case. *See Holland*, 519 F.3d at 915. Upon examination of Plaintiff's arguments, and in considering the facts of this case, the Court concludes that there is no reason why a reasonable person with knowledge of all the facts would question the Undersigned's impartiality in this case. Accordingly, the Court **DENIES** Plaintiff's motion for recusal. *See Clemens v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 428 F.3d 1175, 1180 (9th Cir. 2005) ("Given that mandatory disqualification of a single judge is not warranted simply because of a professional relationship with a victim, it follows *perforce* that disqualification of an entire district is

not justified except under highly exceptional circumstances, which are not present here.") (emphasis in original).

**II.     Defendant's Motion to Dismiss**

Defendant moves to dismiss Plaintiff's FAC for failure to state a claim because: (1) no *Bivens* remedy exists on the facts alleged; and (2) even if a *Bivens* remedy did exist, Defendant is entitled to both quasi-judicial and qualified immunity. *See* Doc. No. 21-1 at 2. The Court addresses Defendant's arguments in turn.

**1.  Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903,

908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## 2. *Bivens* Claim

The Supreme Court in *Bivens* "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, --- U.S. ---, 137 S. Ct. 2003, 2006 (2017) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). The Court has recognized a *Bivens* remedy in only three cases: (1) a Fourth Amendment claim for unreasonable search and seizure against FBI agents, *Bivens*, 403 U.S. at 396; (2) a Fifth Amendment Due Process claim for gender discrimination, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); and (3) an Eighth Amendment claim for failure to provide adequate medical treatment to a prisoner, *Carlson v. Green*, 446 U.S. 14, 19 (1980). The Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *Ziglar v. Abbasi*, ---U.S. ---, 137 S. Ct. 1843, 1857 (2017) (quoting *Iqbal*, 556 U.S. at 675), and the Supreme Court has consistently declined to expand this remedy. "[E]ven a modest extension is still an extension." *Id.* at 1864.

The Supreme Court "articulated a two-part test for determining whether *Bivens* remedies should be extended." *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018) (citing *Abbasi*, 137 S. Ct. at 1859-60). First, courts must determine whether the case presents a new *Bivens* context. *See Abbasi*, 137 S. Ct. at 1859. "If the case is different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court, then the

context is new." *Id.* Second, if the context is new, then courts must determine whether there are any "special factors counselling hesitation," including the availability of alternative remedies, before extending the remedy. *Id.* at 1857. As such, the Court proceeds by determining whether this case presents a new *Bivens* context.

    a. <u>New *Bivens* Context</u>

Plaintiff contends that his Eighth Amendment claim does not present a new *Bivens* context, and relies on the Supreme Court's decision in *Carlson* to support his position. *See* Doc. No. 27 at 4-7. In *Carlson*, the plaintiff brought a *Bivens* suit under the Eighth Amendment on behalf of her deceased son's estate. 446 U.S. at 16. The plaintiff alleged that her son suffered personal injuries while incarcerated, resulting in his death, because federal prison officials failed to give him proper medical attention. *See id.* The Supreme Court permitted "a *Bivens* claim for prisoner mistreatment—specifically, for failure to provide medical care." *Abbasi*, 137 S. Ct. at 1864.

Here, although Plaintiff's Eighth Amendment claim is similar to *Carlson* in that it also involves an Eighth Amendment claim for deliberate indifference to medical needs, the Court nevertheless finds that the case at bar "is different in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court." *Id.* (internal quotation marks and citation omitted). The Supreme Court has made clear that even if a case involves the same "right and mechanism of injury" as *Carlson*, the case can present a "new context" for *Bivens* purposes "if judicial precedents provide a less meaningful guide for official conduct[.]" *Id.* at 1859, 1864.

Plaintiff does not cite to, nor is the Court aware, of any Supreme Court or Ninth Circuit authority holding that probation officers can be liable for deliberate indifference to the medical needs of individuals on supervised release. Plaintiff concedes that "neither the defendant [n]or the federal government were obligated to <u>provide</u> [] medical care to him after [his] release" from custody. Doc. No. 27 at 26 (internal quotation marks omitted) (emphasis in original). Indeed, the Supreme Court in *Estelle v. Gamble* held that the government must provide adequate medical care "for those whom it is punishing

by *incarceration.*" 429 U.S. 97, 103 (1976) (emphasis added). The Supreme Court explained that "an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.* The Supreme Court concluded that "deliberate indifference to serious medical needs of *prisoners* constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id.* at 104 (internal quotation marks and citation omitted) (emphasis added). The Supreme Court did not, however, discuss the responsibility of the government to those who are not in its custody. *See Sisco v. Cal.*, No. 5-cv-867GEB JFM P., 2007 WL 1470145, at *20 (E.D. Cal. May 18, 2007) (granting summary judgment in favor of parole agent because "[o]bligations under the Eighth Amendment only arise during plaintiff's incarceration."), *report and recommendation adopted*, 2007 WL 1771380 (E.D. Cal. June 18, 2007). Thus, the absence of judicial precedent extending the Eighth Amendment protections to individuals on supervised release supports a finding that the instant action presents a "new context" for *Bivens* purposes.

Moreover, the Supreme Court has twice declined to extend the *Bivens* remedy to Eighth Amendment suits involving *incarcerated* individuals. *See Minneci v. Pollard*, 565 U.S. 118, 131 (2012) (refusing to imply a *Bivens* remedy where a federal prisoner seeks damages from prison guards working at a private federal prison); *Malesko*, 534 U.S. at 63 (holding *Bivens* cannot be extended to an Eighth Amendment suit against a private prison operator). Here, because Plaintiff was on supervised release at the time of the alleged injury—and not incarcerated—the Court finds the instant action seeks to extend *Carlson* even further than what the Supreme Court previously rejected in *Pollard* and *Malesko*. Additionally, none of the three cases in which the Supreme Court recognized a *Bivens* remedy were brought against probation officers. *See Malesko*, 534 U.S. at 68 (noting that the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants.").

Accordingly, taking into account the Supreme Court's admonition that extending *Bivens* is now a "disfavored" judicial activity, the Court concludes that Plaintiff's case

differs in meaningful ways from the three cases in which the Supreme Court has recognized a *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675); *see also Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) ("[B]ecause neither the Supreme Court nor we have expanded *Bivens* in the context of a prisoner's First Amendment access to court or Fifth Amendment procedural due process claims arising out of a prison disciplinary process, the circumstances of Vega's case against private defendants plainly presents a 'new context' under *Abbasi*."). As such, the Court proceeds to consider whether any special factors counsel against extending *Bivens* to this area, including whether Plaintiff had alternate avenues of relief available to him. *See Abbasi*, 137 S. Ct. at 1857.

b. Special Factors Counseling Against Extending *Bivens*

As set forth in *Abbasi*, "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id.* at 1865. Here, Plaintiff previously availed himself of an alternative remedy.[5] Prior to Plaintiff's reincarceration, Plaintiff filed a Motion for Transfer of Supervised Release and/or Modification of Supervised Release in his criminal case in the Southern District of Mississippi, requesting the court permit him to move to San Diego to obtain necessary medical treatment for AVN. *See* 15-cr-00045-HTW-FKB (S.D. Miss.) (Doc. No. 243). The assigned district judge, however, found Plaintiff guilty of several supervised release violations, revoked his supervised release,

---

[5] Defendant requests the Court take judicial notice of the documents on file in Plaintiff's criminal case in the Southern District of Mississippi, No. 15-cv-0045-HTW-FKB (S.D. Miss.). *See* Doc. No. 21-1 at 2 n.1. Plaintiff does not oppose Defendant's request. A court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)). As such, the Court **GRANTS** Defendant's request for judicial notice. *See id.*; *see also* Fed. R. Evid. 201(b). Specifically, the Court takes judicial notice of the fact that Plaintiff filed a Motion for Transfer of Supervised Release and/or Modification of Supervised Release (Doc. No. 243), the court denied as moot Plaintiff's motion (Doc. No. 307), and that Plaintiff subsequently appealed to the Fifth Circuit (Doc. No. 314). *See Khoja v. Orexigen Therapeutics Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (noting that in granting a request for judicial notice, courts must "clearly specify what fact or facts it judicially noticed").

and sentenced him to seventy-two (72) months imprisonment. *See id.* (Doc. No. 307). The district judge then denied Plaintiff's Motion for Transfer of Supervised Release and/or Modification of Supervised Release as moot. *See id.* Plaintiff appealed to the Fifth Circuit. *See id.* (Doc. No. 314). Thus, contrary to Plaintiff's assertions that this case is "damages or nothing," Plaintiff continues to utilize an alternative method of relief. Doc. No. 27 at 16. "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863.

Additional special factors include whether there are "other sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy in a suit like this one." *Id.* at 1865. Here, the Court finds that there are sound reasons to think Congress would doubt the necessity of a damages remedy against probation officers outside of an individual's respective judicial district. Moreover, the Court is especially hesitant to recognize a *Bivens* remedy in the absence of binding authority extending the Eighth Amendment right to adequate medical care to individuals on supervised release.

### c. Conclusion

In sum, the Court finds that Plaintiff seeks a *Bivens* remedy in a new context, and that special factors counsel hesitation in extending a *Bivens* remedy to this new context. Accordingly, Plaintiff fails to state a claim upon which relief may be granted. *See Vega*, 881 F.3d at 1155 (declining to expand *Bivens* in new context, and affirming district court's dismissal of *Bivens* claim).

### 3. Quasi-Judicial Immunity and Qualified Immunity

Defendant next argues that even if the Court determined a *Bivens* remedy is implied in this case, Defendant is entitled to both quasi-judicial immunity and qualified immunity. *See* Doc. No. 21-1 at 6-8. In opposition, Plaintiff attempts to distinguish the cases cited by Defendant, and generally asserts that Defendant is not immune from suit. *See* Doc. No. 27 at 17.

/ / /

/ / /

### a. Quasi-Judicial Immunity

Defendant claims that "when probation officers exercise discretion as part of their official duties, they are immune from suit." Doc. No. 21-1 at 6. Thus, because Defendant's decision to deny Plaintiff's request to move to San Diego was discretionary, "quasi-judicial immunity protects [Defendant.]" *Id.* Plaintiff maintains that Defendant's decision was arbitrary and discriminatory in nature; thus, she is not entitled to quasi-judicial immunity. *See* Doc. No. 27 at 22.

"Absolute judicial immunity insulates judges from charges of erroneous acts or irregular action." *Burton v. Infinity Capital Management*, 862 F.3d 740, 747 (9th Cir. 2017) (internal quotation marks and citation omitted). The doctrine "is not reserved solely for judges, but extends to nonjudicial officers for all claims relating to the exercise of judicial functions." *Id.* (quotation marks and citation omitted). "To be protected, the function performed must involve the exercise of discretion in resolving disputes." *Id.* at 748. The Ninth Circuit has applied this doctrine to damages actions under 42 U.S.C. § 1983, *Demoran v. Witt*, 781 F.2d 155, 156 (9th Cir. 1985), as well as *Bivens* actions, *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987).

The Ninth Circuit has explained that absolute immunity "extend[s] to parole officials for the imposition of parole conditions" because that task is "integrally related to an official's decision to grant or revoke parole," which is a "quasi-judicial" function. *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004); *see also Boyce v. Cnty. of Maricopa*, 144 F. App'x 653, 654 (9th Cir. 2005) (affirming the district court's conclusion "that the probation officer defendants were entitled to absolute quasi-judicial immunity against damages claims."). Moreover, "[w]hen a probation officer evaluates an individual to determine whether he has violated the conditions of his probation, the officer is entitled to quasi-judicial immunity." *Young v. Nevada*, No. 17-cv-1062-RFB-VCF, 2017 WL 1734025, at *4 (D. Nev. May 2, 2017). However, "[a]bsolute immunity does not extend" to claims that "parole officers enforced the conditions of . . . parole in

an unconstitutionally arbitrary or discriminatory manner." *Thornton v. Brown*, 757 F.3d 834, 840 (9th Cir. 2013).

Here, the Court is unable to conclude at this time that Defendant is entitled to quasi-judicial immunity. While Plaintiff does not dispute that Defendant's decision denying Plaintiff's transfer request was discretionary and related to her official duties, Plaintiff claims that Defendant "unconstitutionally interfered with and then denied Atwood the ability to seek medical care which he had obtained independently, himself, from civilian doctors in the community." Doc. No. 27 at 26. Further, Plaintiff alleges that "the reasons cited for denying Atwood's request to move to San Diego were neither accurate [n]or based on official policy." FAC ¶ 86. Thus, taking Plaintiff's allegations as true, which the Court must at this stage of the litigation, the Court cannot find that Defendant is entitled to quasi-judicial immunity on this record.

  b. <u>Qualified Immunity</u>

Defendant next contends that she is entitled to qualified immunity. *See* Doc. No. 21-1 at 7. Plaintiff, in opposition, asserts he has sufficiently alleged the deprivation of his Eighth Amendment right to medical care (Doc. No. 27 at 23-24), and that existing precedent placed Defendant on notice that her actions were unlawful under the circumstances (Doc. No. 37 at 3).

"The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 905–06 (9th Cir. 2007) (internal citation and quotation marks omitted). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such a right was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court has discretion to determine which prong to address first, taking into consideration the particular circumstances of the case. *See id.*

1       "For a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (explaining that "existing precedent must have placed the statutory or constitutional question beyond debate . . . [because] immunity protects all but the plainly incompetent or those who knowingly violate the law") (internal quotation marks and citation omitted)). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

      The underlying purpose of this defense is "to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011).

      Here, Plaintiff cannot demonstrate that Defendant violated "clearly established" law. First, as mentioned above, Plaintiff fails to identify any Supreme Court or Ninth Circuit law extending the Eighth Amendment right to adequate medical care to individuals on supervised release, or any authority mandating inter-district transfers for individuals on supervised release who seek to obtain medical treatment outside of their respective judicial districts. Plaintiff cites to a decision from the Seventh Circuit, wherein the court indicates, "[w]e have not yet addressed whether parole officers can be liable for deliberate indifference to a parolee's serious medical need[.]" *Mitchell v. Kallas*, 895 F.3d 492, 502 (7th Cir. 2018). The Seventh Circuit stated that though parole officers "may have no duty under *Gamble* to provide a parolee with medical care or ensure that she receives it, they at least may be constitutionally obligated not to block a parolee who is trying to arrange such care for herself without any basis in the conditions of parole." *Id.* The court then concluded that the plaintiff has sufficiently "pleaded

enough to proceed on the theory that the parole officers acted with deliberate indifference to her gender dysphoria by blocking her from getting care." *Id.* *Mitchell*, however, is not binding on this Court.[6] Moreover, the *Mitchell* decision postdates the events in this case, as Defendant denied Plaintiff's request to transfer to San Diego to obtain medical treatment in mid-June 2017. *See* FAC ¶¶ 49, 56-57. Thus, even if *Mitchell* did apply to this case, it could not have placed Defendant on notice that her actions were unlawful under the circumstances.

Accordingly, the Court finds that Defendant is entitled to qualified immunity because it is not clearly established that: (1) individuals on supervised release have a constitutional right to medical treatment guaranteed by the Eighth Amendment; and (2) that probation officers have an obligation to ensure an individual on supervised release obtains medical treatment outside of his judicial district.[7] *See Wakefield v. Thompson*, No. 95-cv-137 FMS, 1996 WL 241783, at *4 (N.D. Cal. April 30, 1996) ("In the present case, plaintiff attempts to extend the protections afforded by the Eighth Amendment to individuals who have been released on parole. This extension is not supported by the Supreme Court's rationale."), *aff'd*, 185 F.3d 872, 1999 WL 397496, at *1 (9th Cir. 1999) (unpublished opinion) (noting that plaintiff's parole officer had no "constitutional

---

[6] Plaintiff also cites *Stewart v. Raemisch*, wherein the district court issued an order finding the plaintiff's Eighth Amendment claim against parole officers for deliberate indifference to medical needs sufficient to pass screening pursuant to 28 U.S.C. § 1915A. No. 9-cv-123, 2009 WL 3754173, at *3 (E.D. Wisc. Nov. 4, 2009). Plaintiff's reliance on *Stewart* is similarly misplaced because it is neither binding on this Court, nor did the court in *Raemisch* address the issue of qualified immunity in its screening order.

[7] In light of the Court's conclusion that Plaintiff's *Bivens* claim fails as a matter of law, the Court **DENIES AS MOOT** Plaintiff's pending motions for summary judgment (Doc. No. 32), and for a court order allowing access to legal materials (Doc. No. 33). *See Nakamura v. Wells Fargo Bank, N.A.*, No. 12-cv-8146 SJO (CWx), 2013 WL 12138981, at *5 (C.D. Cal. March 7, 2013) ("The Court's dismissal of the instant action [with prejudice] moots Plaintiffs' pending Motion for Summary Judgment."). Specifically, the Court need not look beyond the pleadings (to Plaintiff's medical records) to determine that Plaintiff's *Bivens* claim fails, and that Defendant is entitled to qualified immunity.

obligation to provide [plaintiff] with medication, or a prescription, after his release [from prison].").

### CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's motion for recusal. Additionally, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's FAC with prejudice. *See McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003) (noting dismissal without leave to amend is proper if it is clear that "the complaint could not be saved by any amendment."). The Clerk of Court is instructed to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

Dated: March 29, 2019

HON. MICHAEL M. ANELLO
United States District Judge